UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
PADUCAH DIVISION
CIVIL ACTION NO. 5:15-CV-00244-LLK

TRACEY WRIGHT-EAST                                                                                      PLAINTIFF

v.

CAROLYN COLVIN, Commissioner of Social Security                              DEFENDANT

**MEMORANDUM OPINION AND ORDER**

This matter is before the Court on Plaintiff's complaint seeking judicial review of the final decision of the Commissioner denying her claim for Social Security disability benefits. Plaintiff has filed a motion for summary judgment and supporting memorandum of law (Docket Number 12), and Defendant has responded in opposition (DN 14). The parties have consented to the jurisdiction of the undersigned Magistrate Judge to determine this case, with any appeal lying before the Sixth Circuit Court of Appeals (DN 11). The case is ripe for decision.

The Administrative Law Judge (ALJ) found that Plaintiff suffers from "severe," or vocationally-significant, degenerative disc disease, chronic kyphosis (rounding of the back) status post thoraco-lumbar fusion, and history of right shoulder injury, which limit her to a residual functional capacity (RFC) for light work with walking no more than 2 hours per 8-hour workday and alternate sitting/standing every 30 minutes (plus additional postural and environmental restrictions). ALJ's decision at Administrative Record (AR), pp. 15 and 18. Plaintiff claims that the ALJ erred in not listing fibromyalgia among her severe impairments.

The Court will AFFIRM the ALJ's decision because the ALJ acknowledged the presence of fibromyalgia-like symptoms and, regardless of label, Plaintiff has failed to show that her impairments result in vocationally-significant limitations in excess of the ALJ's RFC finding. See Maziarz v. Secretary, 837 F.2d 240, 244 (6th Cir.1987) (If the ALJ considers the limiting effects of all severe and non-severe

1

impairments as a whole, the ALJ's not labeling a specific impairment as severe "does not constitute reversible error").

## Discussion

The vocational expert (VE) testified that an individual with the RFC found by the ALJ would retain the ability to perform Plaintiff's past relevant work as a nurse consultant and also a significant number of other jobs in the national economy. AR, pp. 31-33. This testimony supported the ALJ's denial decision. ALJ's decision, AR, pp. 26-27.

Plaintiff has failed to identify any evidence, which the ALJ was required to accept, of a limitation in addition to those found by the ALJ and incorporated into the controlling vocational hypothetical. She has not shown that the ALJ was required to credit her allegations of subjective symptoms resulting in excessive absenteeism from the job or job site beyond the tolerance of most employers. The general rule in such cases is affirmance of the ALJ's decision. See Ealy v. Commissioner, 594 F.3d 504, 516 (6th Cir.2010) (The vocational testimony constitutes substantial evidence in support of an ALJ's decision if the limitations assumed "accurately portray" the claimant's impairments) and Sumner v. Commissioner, 2014 WL 1341085 (W.D.Mich.) (In a fibromyalgia case, the vocational hypothetical must incorporate only those limitations found credible).

Plaintiff presents three principal claims: 1) The ALJ erred in finding her alleged fibromyalgia to be non-severe. 2) The ALJ did not properly weigh the opinion of her treating nurse practitioner. 3) The ALJ did not properly assess her credibility. Plaintiff's Memorandum, DN 12-1, pp. 3-7, 7-11, and 11-12, respectively.

## Governing legal standards in fibromyalgia cases:
## Rogers v. Commissioner, 486 F.3d 234 (6th Cir.2007)

Fibromyalgia is "a complex medical condition characterized primarily by widespread pain in the joints, muscles, tendons, or nearby soft tissues that has persisted for at least 3 months." Social Security

Ruling (SSR) 12-2p (available at 2012 WL 3104869).  The principal symptoms are pain all over, fatigue, disturbed sleep, and stiffness.  The causes are unknown, and there is no cure.

According to the seminal case in this Circuit (cited most frequently) when the allegedly disabling impairment is fibromyalgia:  "[O]f greatest importance to disability law, [fibromyalgia's] symptoms are entirely subjective."  Rogers v. Commissioner, 486 F.3d 234 n.3 (6th Cir.2007).  Patients "present no objectively alarming signs."  Id. at 243.  They manifest normal muscle strength and neurological reactions and have a full range of motion.  Id. at 244.

Like its symptoms, the process of diagnosing fibromyalgia is subjective, or at least, based on the patient's subjective responses:  It includes testing a series of focal/trigger points for tenderness and ruling out of other possible conditions.  Id.  The focal-point test consists of pressing firmly in 18 fixed locations on the body to determine if the patient flinches or experiences any pain at least 11 times.  SSR 12-2p.

Despite its subjective nature, the Sixth Circuit has repeatedly held that fibromyalgia can be a "severe" impairment, i.e., one that is medically determinable and vocationally significant.  See Rogers collecting cases.

On the other hand, the mere "diagnosis (emphasis original) of fibromyalgia does not automatically entitle [a claimant] to disability benefits."  Torres v. Commissioner, 490 Fed.Appx. 748, 2012 WL 3089334 (6th Cir.).  Indeed, most fibromyalgia sufferers are not disabled, and the question before the court is whether the evidence required the ALJ to find that the plaintiff is "one of the minority."  Id.

Practically speaking, fibromyalgia is typically disabling when subjective symptoms credibly result in:  1) job absences in excess of approximately 2 days per month; 2) more than a few (if any) unscheduled breaks from the work station (in addition to the customary 15-minute breaks in the

morning and afternoon and a 30-minute lunch break); and/or 3) inability to sit or stand/walk for approximately 30 minutes at a time (before needing to alternate position).

The 5-step sequential evaluation process for evaluating a Social Security disability claim[1] is essentially the same when the allegedly-disabling impairment is fibromyalgia. The main difference is the extra care the ALJ should take in making his or her residual functional capacity (RFC) finding (relevant at Steps 4 and 5 of the evaluation process) and in particular: 1) Evaluating the credibility of the claimant's allegations with respect to the limiting effects of pain and other subjective symptoms; and 2) Determining the weight given to any treating-source medical opinion with respect to what the claimant can still do despite her impairments.

In evaluating credibility, the ALJ may not discount the claimant's statements about the intensity, persistence, and functionally-limiting effects of symptoms solely because they are not substantiated by objective medical evidence. The ALJ may ultimately discount such statements but the rationale must be based upon the evidence as a whole, including the claimant's daily activities; the location, duration, frequency, and intensity of symptoms; factors that precipitate and aggravate symptoms; the type, dosage, effectiveness, and side effects of any medication taken to alleviate the symptoms; other treatment undertaken to relieve symptoms; other measures taken to relieve symptoms, such as lying on one's back; and any other factors bearing on the limitations of the claimant to perform basic functions. Rogers referring to factors at 20 C.F.R. § 404.1529(c)(3) and SSR 96-7p.

---

[1] The regulations promulgated by the Commissioner establish a 5-step sequential evaluation process:
1. If the claimant is doing substantial gainful activity, the claimant is not disabled.
2. If the claimant does not have a severe medically determinable physical or mental impairment – i.e., an impairment that significantly limits his or her physical or mental ability to do basic work activities – the claimant is not disabled.
3. If the claimant has a severe impairment(s) that meets or equals one of the listings in Appendix 1 to Subpart P of the regulations and meets the duration requirement, the claimant is disabled.
4. If the claimant's impairment does not prevent him or her from doing his or her past relevant work, the claimant is not disabled.
5. If the claimant can make an adjustment to other work, the claimant is not disabled. If the claimant cannot make an adjustment to other work, the claimant is disabled.
Rubbers v. Commissioner, 582 F.3d 647, 652 (6th Cir.2009) citing 20 C.F.R. § 404.1520.

The ALJ's evaluation of a claimant's credibility and the weighing of the medical opinions should consider all relevant factors. However, there is no requirement that the ALJ's decision explicitly engage in a factor-by-factor analysis. See Rogers quoting SSR 96-7p (The decision "must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight") and SSR 96-2p (The decision must be "sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight").

Roger's central holding, then, may be summarized as follows: It is error to deem fibromyalgia a non-severe impairment at Step 2 of the sequential evaluation process due simply to a lack of substantiating objective medical evidence. The error is a reversible one when the ALJ's decision affirmatively shows that this same error of insistence upon objective evidence permeated the remainder of the evaluation process.

Where there is a lack of evidence of such error, it is unlikely that a reviewing court will reverse the ALJ's decision. See Blakley v. Commissioner, 581 F.3d 399, 406 (6th Cir.2009) (The court will not re-weigh the evidence and substitute its judgment for that of the ALJ merely because substantial evidence exists in the record to support a different conclusion; the substantial-evidence standard of review presupposes that there is a "zone of choice" within which the ALJ may go either way without judicial inference).

### The ALJ's credibility analysis was proper.

Plaintiff claims that the ALJ did not properly assess her credibility. Plaintiff's Memorandum, DN 12-1, pp. 11-12.

In evaluating Plaintiff's credibility, the ALJ did not dismiss Plaintiff's allegations of limitations caused by fibromyalgia-like symptoms (due to lack of objective evidence or any other reason) but attempted to accommodate them in crafting her RFC finding. The ALJ acknowledged that Plaintiff

suffers from myofascial and diffuse pain syndromes, which result in symptoms similar to (or indistinguishable from) those caused by fibromyalgia.

In accepting Plaintiff's allegations of limitation due to pain and other subjective symptoms only to the extent of her RFC finding, the ALJ relied on Plaintiff's level of daily activities, including being primary caregiver to her children ages 1 and 10, driving, stretching, and doing yoga. She also relied on a lack of evidence of a progressive worsening of symptoms in light of Plaintiff's response to surgical intervention, medication management, and injection therapy. AR, pp. 23-25.

These were legitimate factors to consider in evaluating credibility. See SSR 12-2p referring to factors at 404.1529(c)(3); see also Cocke v. Commissioner, 5:13-CV-00114-LLK, 2014 WL 798158 (W.D.Ky.) (In fibromyalgia cases, due to an inherent lack of objective evidence, the ALJ typically focuses on the claimant's activities of daily living or lack thereof and whether the individual's treatment records show that the symptoms have progressively worsened, improved, or remained stable).

Although Plaintiff persuasively shows that substantial evidence would have supported a finding that her allegations are fully credible, she has not shown that the ALJ abused his discretion or acted outside his "zone of choice" in finding the allegations to be only partially credible. See Blakley, supra, regarding the ALJ's "zone of choice" and Smith v. Commissioner, 307 F.3d 377, 379 (6th Cir.2001) (The Court will not disturb an ALJ's credibility finding absent "compelling reason").

It is not the Court's role (absent a compelling reason) to second-guess an ALJ's credibility findings. Unlike the Court, which reviews only a written administrative record, the ALJ had the benefit of live interaction with Plaintiff. See Jones v. Commissioner, 336 F.3d 469, 476 (6th Cir.2003) ("Upon review, we are to accord the ALJ's determinations of credibility great weight and deference particularly since the ALJ has the opportunity, which we do not, of observing a witness's demeanor while testifying") and Cocke, supra (In fibromyalgia cases, due to an inherent lack of objective evidence, the credibility

assessment often requires a consideration of "subtle factors that are not apparent on the face of the record such as demeanor").

The ALJ's credibility analysis was supported by substantial evidence and was in accord with applicable legal standards.

### The ALJ properly weighed the treating nurse practitioner's opinion.

Plaintiff claims that the ALJ did not properly weigh the opinion of her treating nurse practitioner. Plaintiff's Memorandum, DN 12-1, pp. 7-11.

In this case, unlike Rogers, there was no fibromyalgia diagnosis by an acceptable medical source, and no treating physician opined specific limitations due to fibromyalgia.

Plaintiff began seeing advanced registered nurse practitioner (ARNP) Autumn Triplett in March, 2014. AR, p. 963. In May, 2014, Ms. Triplett completed the Medical Source Statement Of Ability To Do Work-Related Activities (Physical) form. AR, pp. 979-982. The ALJ gave "great weight" to Ms. Triplett's opinion, which she found to be generally consistent with Plaintiff's allegations. ALJ's decision, AR, pp. 20 and 26.

Although nurse practitioners are not "acceptable medical sources" listed at 20 C.F.R. § 404.1513(a), their opinions, like all relevant evidence, are important. An ALJ evaluates such opinions in light of the same factors at 20 C.F.R. §§ 404.1527(c)(1) through (5) that are considered when weighing the opinion of a treating physician which is not given controlling weight. See SSR 06-03p (available at 2006 WL 2329939) (the Ruling pertains to "considering opinions and other evidence from sources who are not 'acceptable medical sources'"). The factors include the length, frequency, nature, and extent of the treatment relationship; the supportability and consistency of the source's conclusions; the specialization of the source; and any other relevant factors.

Plaintiff has not shown that, in evaluating Ms. Triplett's opinion, the ALJ abused her discretion or acted outside her "zone of choice" (see Blakley, supra) in weighing the relevant factors and adopting

7

Ms. Triplett's opinion only to the extent of her RFC finding. This is especially so in light of the relatively short period of time (about 2 months) that Ms. Triplett's had treated Plaintiff when she gave her opinion in support of Plaintiff's disability claim and in light of the ALJ's credibility finding.

In particular, Plaintiff contends that the ALJ did not properly evaluate Ms. Triplett's finding that she must periodically alternate sitting and standing to relieve pain or discomfort. AR, p. 980. The argument is unpersuasive because Ms. Triplett did not quantify Plaintiff's need to change position, and the ALJ found (and the controlling vocational hypothetical contemplated) that she must alternate sitting/standing every 30 minutes. AR, pp. 18 and 66. To the extent Plaintiff alleged greater limitation, the ALJ implicitly rejected the allegation as incredible.

Plaintiff's reliance on her cross-examination of the VE is unpersuasive. The VE testified that she would be unemployable if the alternate standing/walking required her to leave the work station every 30 minutes for greater than 15 minutes. AR, p. 68. The hypothetical must incorporate only those limitations the ALJ found credible. See Ealy and Sumner, supra.

Plaintiff's reliance on SSR 96-9p (available at 1996 WL 374185) is unpersuasive because the provision Plaintiff relies upon[2] applies only to individuals limited to unskilled, sedentary work. The ALJ found that Plaintiff can perform light work, and the VE testified that her past relevant work as a nurse consultant was skilled. AR, pp. 18 and 65.

The ALJ's weighing of the opinion of the treating nurse practitioner was supported by substantial evidence and was in accord with applicable legal standards.

**The ALJ's finding of non-severe fibromyalgia was, at worst, harmless error.**

---

[2] Among other things, SSR 96-9p provides:
*Alternate sitting and standing:* An individual may need to alternate the required sitting of sedentary work by standing (and, possibly, walking) periodically. Where this need cannot be accommodated by scheduled breaks and a lunch period, the occupational base for a full range of unskilled sedentary work will be eroded. The extent of the erosion will depend on the facts in the case record, such as the frequency of the need to alternate sitting and standing and the length of time needed to stand. The RFC assessment must be specific as to the frequency of the individual's need to alternate sitting and standing. It may be especially useful in these situations to consult a vocational resource in order to determine whether the individual is able to make an adjustment to other work.

Plaintiff claims that the ALJ erred in finding her alleged fibromyalgia to be non-severe. Plaintiff's Memorandum, DN 12-1, pp. 3-7.

To be "severe," an impairment must be medically determinable and significantly limit ability to do basic work activities. 20 C.F.R. §§ 404.1520(a)(4)(ii) and (c). To be "medically determinable," the impairment must be shown by medically-acceptable clinical and laboratory diagnostic techniques and established by medical evidence consisting of signs, symptoms, and laboratory findings (not only statements of symptoms). 20 C.F.R. § 404.1508.

It is error to find that fibromyalgia is a non-severe impairment due simply to a lack of substantiating objective medical evidence. Rogers, supra. The ALJ did not commit this error. She acknowledged that Plaintiff suffers from vocationally-significant fibromyalgia-like symptoms affecting her ability to do basic work activities. Her finding of non-severe fibromyalgia was due to lack of a proper fibromyalgia diagnosis from an acceptable medical source:

> In January 2011, Travis Calhoun, M.D., noted that the claimant was being treated "more or less" for fibromyalgia in the absence of positive serologies for an inflammatory condition. However, the record is void of any clinical evidence of positive trigger points commonly found in those with fibromyalgia and as set forth in Social Security Ruling 12-2p. Therefore, medically determinable fibromyalgia cannot be established by the medical evidence of record at this time. (ALJ's decision, AR, p. 16)

The ALJ cannot fairly be faulted for the state of the medical evidence as Plaintiff has the ultimate burden of proving her disability claim; nor, as a lay individual, can the ALJ fairly be criticized for describing Plaintiff's symptoms in a manner that avoided what would have been tantamount to a medical diagnosis.

Under these circumstances (and notwithstanding the extra care that fibromyalgia cases require), there is no reason apparent why the Court should not apply the general rule when reviewing claims of ALJ error due to failure to identify as "severe" a particular impairment: Once an ALJ makes a finding of at least one severe impairment, she must "consider limitations and restrictions imposed by all of an

9

individual's impairments, even those that are not 'severe.'" SSR 96-8p (available at 1996 WL 374184). Conversely, if the ALJ considers the limiting effects of all severe and non-severe impairments as a whole, her not including a specific impairment in the list of severe impairments "does not constitute reversible error." Maziarz v. Secretary, 837 F.2d 240, 244 (6th Cir.1987); see also McGlothin v. Commissioner, 299 Fed.Appx. 516, 522 (6th Cir.2008) (It is "legally irrelevant" that the ALJ found an impairment to be non-severe because he acknowledged other severe impairments and completed the evaluation process).

The ALJ's finding that Plaintiff's alleged fibromyalgia is non-severe was, at worst, harmless error.

**Order**

Therefore, Plaintiff's motion for summary judgment (Docket Number 12) is DENIED, the final decision of the Commissioner is AFFIRMED, and Plaintiff's complaint is DISMISSED. A separate judgment shall issue with this Order.